**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**JOHN CALDWELL**                                                       **PLAINTIFF**
**ADC # 90188**

V.                   Case No. 5:14CV00042 BSM/BD

**WENDY KELLEY, et al.**                                   **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.**     **Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Brian S. Miller. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection. Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II.**     **Discussion:**

    A.     Background

Plaintiff John Caldwell, an Arkansas Department of Corrections inmate ("ADC"), filed this *pro se* § 1983 action alleging that, while he was housed in the Varner Unit, Defendants Deborah York, Dr. Robert Floss, and Dr. Ojiugo Iko ("Medical Defendants")

failed to provide him with constitutionally adequate medical care for chronic muscle wasting and arthritis in his right leg, and that Defendant Wendy Kelley knew about the lack of medical care but failed to take any corrective action. In addition, Mr. Caldwell alleges that Defendant Kelley failed to adequately train and supervise her staff. (Docket entry #2)

The Medical Defendants have moved for summary judgment, arguing Mr. Caldwell's deliberate-indifference claim fails as a matter of law. (#76) Mr. Caldwell has responded to the Medical Defendants' motion. (#91, #92, #93)

Separate Defendant Kelley filed a separate motion for summary judgment on the sole issue of exhaustion, arguing that the corrective inaction claim against her should be dismissed because Mr. Caldwell has not exhausted his administrative remedies on his claims against her. (#37, #38, #39) Mr. Caldwell responded to that motion. (#42)

Later, Defendant Kelley filed a second motion for summary judgment on the merits arguing that Mr. Caldwell cannot establish a deliberate-indifference claim against her as a matter of law; that supervisory liability does not apply; and that she is entitled to both qualified and sovereign immunity. (#72, #73, #74) Mr. Caldwell also responded to that motion. (#83)

For the reasons set forth below, the Court will recommend that the Medical Defendants motion for summary judgment (#76) be GRANTED; that Defendant Kelley's

motion for summary judgment on the issue of exhaustion (#37) be DENIED; and that Defendant Kelley's motion for summary judgment on the merits (#72) be GRANTED.

    B.    Standard

Summary judgment is granted to a party when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving party must first present evidence that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party meets this burden, the nonmoving party must come forward with evidence showing that there is a genuine dispute that must be decided at a trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the nonmoving party does not offer proof to establish a necessary element of a claim, the moving party is entitled to judgment on that claim. *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

    C.    Medical Defendants' Motion for Summary Judgment

        1.    Factual Background

Mr. Caldwell suffered a severed Achilles tendon when he was 10 years old. (#77, Ex. B, p.11) According to Mr. Caldwell, this caused his ankle to improperly flex. (#77, Ex. B, p.11) As a result, he has a history of muscle wasting in his right leg. (#77, Ex. C)

Since October 16, 2012, Mr. Caldwell has been issued medical restrictions that: (1) restrict assignments requiring prolonged crawling, stooping, running, jumping, walking or standing; (2) restrict assignments requiring strenuous physical activity; and (3) restrict assignments requiring handling, lifting of heavy materials in excess of ten pounds or requiring overhead work. (#77, Ex. C)

Mr. Caldwell had a no-stair prescription when he was examined by Defendant Iko on May 14, 2013. (#77, Ex. C) Defendant Iko noted that it was time to evaluate Mr. Caldwell's no-stair prescription and that Mr. Caldwell was issued the prescription as a result of arthritis on the right side of his body and broken ankle that he suffered in 2012. (#77, Ex. C) Defendant Iko noted that Mr. Caldwell's x-rays revealed a normal shoulder, mild cervical arthritis, a normal right knee, and sclerosis along the right femoral head. She also noted that Mr. Caldwell was ambulating without difficulty and had normal functional status.[1] (#77, Ex. C) Defendant Iko found that there was no clinical indication for a no-stair prescription and discontinued the prescription. (#77, Ex.B, p.14, Ex. C)

On April 17, 2013, APN Connie Hubbard examined Mr. Caldwell regarding complaints of his right arm going to sleep and ordered gabapentin for pain for 90 days. (#77, Ex. C) On May 22, 2013, APN Connie Hubbard ordered naproxen for 90 days for joint pain and requested a consultation with an orthopedist to examine Mr. Caldwell.

---

[1] Mr. Caldwell disputes this assertion. (#92)

(#77, , Ex. A, Ex. B, p. 28, Ex. C)  According to Mr. Caldwell, Defendant Floss cancelled the appointment.  (#77, Ex. B, p. 28)

On June 12, 2013, Defendant Iko evaluated Mr. Caldwell in chronic care due to Mr. Caldwell's complaints about pain in his right Achilles tendon.  (#77, Ex. C)  Defendant Iko noted a thickened right Achilles tendon that was non-tender and a normal heel lift and arch.  (#77, Ex. C)  Defendant Iko also noted that Mr. Caldwell had a slightly smaller right calf muscle but that the functionality was intact.  (#77, Ex. C)  Defendant Iko encouraged Mr. Caldwell to increase his right calf muscle by performing heel lifts and told him that climbing stairs would be beneficial.  (#77, Ex. C)  On this same day, Defendant Iko renewed Mr. Caldwell's prescriptions for acetaminophen with aspirin, naproxen, and gabapentin, all pain medications used to address arthritic pain.  (#77, Ex. A, Ex. C)

Mr. Caldwell argues that he was never made aware of any prescription of pain medication and that the nurses told him they did not have any prescription at the pill-call window.  (#91)  Mr. Caldwell states that he made the Medical Defendants aware of this fact, but that they did nothing to remedy the problem.  (#91)  Mr. Caldwell admits that he took acetaminophen with aspirin for headaches during this time period, and his medical records show that he was receiving prescriptions for pain medication.  (#92, #77, Ex. A)

On July 4, 2013, Defendant Iko examined Mr. Caldwell for a renewal of a medically prescribed shoe.  (#77, Ex. C)  On that date, Mr. Caldwell was wearing some

5

orthopedic shoes that had been prescribed to him more than a year earlier. (#77, Ex. B, pg. 49) Defendant Iko noted that Mr. Caldwell had been able to manage his injury since childhood and that his injury was completely healed prior to incarceration. (#77, Ex. C) Defendant Iko found that there was no indication for medically prescribed shoes; rather, two different-sized shoes would be appropriate. (#77, Ex. C)

On July 8, 2013, Mr. Caldwell was transferred from the Varner Unit to the East Arkansas Regional Unit ("EARU"). (#77, Ex. B, p.14) When he was transferred to the EARU, his no-stair prescription was restored and he was prescribed a cane. (#92) Mr. Caldwell was then seen by an orthopedic doctor who fitted him with a new set of orthopedic shoes. (#92, #77, Ex. B, pg. 50) Mr. Caldwell argues that he now walks with a cane now due to the inadequate medical care he received at the Varner Unit. (#91, #92) In Defendant Floss's medical opinion, Mr. Caldwell received appropriate care and treatment for his complaints while at the Varner Unit. (#77, Ex. C)

      2.    Analysis

Determining whether an official was deliberately indifferent to an inmate's medical needs requires both objective and subjective analyses. *Scott v. Benson*, 742 F.3d 335, 339–40 (8th Cir. 2014). To prevail, Mr. Caldwell first must establish that he suffered from an objectively serious medical need. *Id*. at 340. Next, Mr. Caldwell must show that the Defendants "actually knew of but deliberately disregarded [his] serious medical need." *Id*. This showing requires a mental state "akin to criminal recklessness."

*Id*. (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). Mr. Caldwell must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014). He must show that the Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997).

      a.    Defendant Iko

Mr. Caldwell alleges that Defendant Iko failed to provide him adequate medical care because she discontinued his no-stair prescription, failed to provide him with orthopedic shoes, and did not give him the pain relieving prescriptions that he needed.

In Defendant Iko's medical opinion, a no-stair prescription was not necessary. Defendant Floss agreed with Defendant Iko's conclusion that Mr. Caldwell could actually benefit from the use of stairs to build his right calf muscle. There is no evidence that the discontinuation of the no-stair prescription had any adverse medical effect on Mr. Caldwell. In fact, there is no evidence that Mr. Caldwell was required to use any stairs after Defendant Iko lifted the no-stair prescription. Although Mr. Caldwell might have disagreed with Defendant Iko's decision, a mere disagreement about medical treatment

does not amount to a constitutional violation. *Pietrafeso v. Lawrence County, S.D.*, 452 F.3d 978, 983 (8th Cir. 2006).

Based on the evidence presented, it is unclear why Defendant Iko did not allow Mr. Caldwell to be seen by an orthopedist in order to receive a new set of orthopedic shoes. Negligence, however, and even gross negligence does not rise to the level of a constitutional claim. *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). Furthermore, there is no evidence suggesting that Mr. Caldwell was harmed by Defendant Iko's decision to not allow him to receive new orthopedic shoes, other than his own assertions. Again, Mr. Caldwell might have disagreed with Defendant Iko's assessment, but there is no showing that this was a constitutional violation.

Furthermore, although Mr. Caldwell alleges he did not have access to pain medications because Defendant Iko cancelled his prescriptions, the evidence is that he had prescriptions for pain relievers during the time in question, and admitted to taking them for headaches. (#92, #77, Ex. A)

Mr. Caldwell has not provided any facts suggesting that Defendant Iko knew that her treatment, or lack of treatment, created an excessive risk to Mr. Caldwell's health. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). Based on the evidence presented, Mr. Caldwell cannot establish a constitutional claim of deliberate indifference against Defendant Iko.

      b.  Defendant York

Mr. Caldwell states that Defendant York, as infirmary manager with a medical nursing degree, failed to prevent pain and suffering by going along with Defendant Iko's recommendations, thus constituting deliberate indifference. (#93, #77, Ex. B, pg. 19) Mr. Caldwell asserts that Defendant York was directly involved in the denial of treatment by Defendant Iko. (#92) Mr. Caldwell, however, does not provide any evidence to support this assertion. Rather, he admits that his only involvement with Defendant York was that he submitted grievances to her. (#77, Ex. B, pg. 19)

Defendant York's involvement in the grievance process is not actionable. *Day v. Correctional Medical Services,* 281 Fed. Appx. 624, 626 (8th Cir. 2008) (unpub. per curiam)(participation in the grievance process is insufficient to establish liability under § 1983); and *Rowe v. Norris,* 198 Fed. Appx. 579, *1 (8th Cir. 2006) (unpub. per curiam). Furthermore, in a § 1983 action, a supervisor cannot be held liable for the constitutional violations of a subordinate based solely on his or her position as a supervisor. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (holding that the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability"). A deliberate-indifference claim must be brought against the individual directly responsible for an inmate's medical care. *Keeper,* 130 F.3d at 1314.

Here, however, even if Defendant York was personally involved in Mr. Caldwell's medical care, as discussed above, the Court has determined that Mr. Caldwell's deliberate-indifference claim against Defendant Iko fails as a matter of law. Accordingly, his claim against Defendant York also fails.

c. Defendant Floss

Mr. Caldwell alleges that Defendant Floss "did everything possible to stop Plaintiff from having access to a doctor actually qualified to fix Plaintiff's leg." (#91) He further alleges that Defendant Floss's approval of Defendant Iko's actions without ever examining Mr. Caldwell establishes deliberate indifference. (#92)

As noted, a deliberate-indifference claim must be brought against the individual directly responsible for an inmate's medical care. *Keeper*, 130 F.3d at 1314. It is undisputed that Defendant Floss was in no way directly involved in Mr. Caldwell's medical care. Accordingly, Mr. Caldwell's claim against Defendant Floss fails. Furthermore, even assuming that Defendant Floss was personally involved in Mr. Caldwell's medical care, as discussed above, the Court has determined that Mr. Caldwell's deliberate-indifference claim against Defendant Iko fail as a matter of law. Therefore, Defendant Floss also is entitled to judgment as a matter of law.

D.   Separate Defendant Kelley's Motions for Summary Judgment

1.   Factual Background

Mr. Caldwell sues Defendant Kelley, alleging that she knew about the lack of medical care but failed to take corrective action. In addition, he claims that she failed to train and supervise staff. (#2)

At all times relevant to Mr. Caldwell's claims in this case, Defendant Kelley was employed by the ADC as Chief Deputy Director of its Administrative Office in Pine Bluff, Arkansas. (#72, Ex. 2) ADC employees are not involved in the day-to-day delivery of medical services, other than to provide security. (#72, Ex. 2) Clinicians handle the delivery of medical services by contract between ADC and independent contractors, such as Corizon, Inc. and Correct Care Solutions. (#72, Ex. 2) Defendant Kelley is not a physician. (#72, Ex. 2) She did not supervise Corizon or Correct Care Solutions employees. (#72, Ex. 2)

In Defendant Kelley's role as Chief Deputy Director, she received and responded to inmates' health-related grievances to ensure that medical staff responded to inmates' requests for health care and that providers' orders were completed. (#72, Ex. 2) When addressing grievances, Defendant Kelley relied upon the expertise of medical providers. (#72, Ex. 2)

Mr. Caldwell filed seven relevant grievances related to this lawsuit: EA-13-01352, EA-13-01977, EA-13-01978, EA-13-02019, VU-13-00689, VU-13-00766, and VU-13-01669.[2] (#37, Ex. 2-9)  Three of the grievances specifically name Defendant Kelley.

In grievance EA-13-01352, Mr. Caldwell states that "Kelly [sic] . . . displayed a deliberate indifference to my safety and health." (#37, Ex. 3)  In grievance EA-13-01977 Mr. Caldwell states, "[t]his is directed to Wendy Kelly [sic] and her deliberate indifference to my safety and health and her knowingly falsifying records within the grievance procedure." (#37, Ex. 3)  Finally, in grievance EA-13-02019, Mr. Caldwell asserts that, "Wendy Kelly [sic] you are in violation of administrative policy by responding this way. You cannot give blanket answers in this way." (#37, Ex. 3)

    2.    Exhaustion

The Prison Litigation Reform Act requires the Court to dismiss any claim raised that was not fully exhausted prior to filing a civil lawsuit under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a) (declaring, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340

---

[2] Grievance VU-13-0069 was not exhausted before the filing of this lawsuit and will not be considered.

F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory")

Defendant Kelley argues that Mr. Caldwell did not exhaust his administrative remedies regarding his corrective-inaction claim. An inmate's failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proved by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Nerness v. Johnson,* 401 F.3d 874, 876 (8th Cir. 2005).

Because Mr. Caldwell specifically named Defendant Kelley and complained about her response or lack of response to his complaints, the Court should not dismiss her from the lawsuit based on a failure to exhaust administrative remedies. Defendant Kelley is not entitled to judgement as a matter of law on this basis.

        3.        Deliberate-Indifference Claim

Defendant Kelley is not entitled to dismissal based on a failure to exhaust, but she has filed a separate motion for summary judgment based on the merits of Mr. Caldwell's claims. Mr. Caldwell's claims against Defendant Kelley are dependent upon the success of his claims against the Medical Defendants. Because Mr. Caldwell's underlying deliberate-indifference claims against the Medical Defendants fail as a matter of law, his claims against Defendant Kelley cannot survive.

### III.  Conclusion:

The Court recommends that the Medical Defendants' motion for summary judgment (#76) be GRANTED.  The Court further recommends that Defendant Kelley's motion for summary judgment based on a failure to exhaust administrative remedies (#37) be DENIED, but that Defendant Kelley's motion for summary judgment on the merits (#72) be GRANTED.  Accordingly, all of Mr. Caldwell's claims should be DISMISSED, with prejudice.

DATED, this 21st day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE